NiCHOiisON, C. J.,
delivered the opinion of the Court.
In December, 1866, Jones and Harwell entered into a written agreement, by which Harwell was to cultivate thirty-five acres of Jones’ land in 1867, and to have half the corn and cotton made. Immediately after the written contract was signed, they agreed by parol, that Harwell’s half of the crop was to stand good for any provisions Jones might furnish him during the year. Jones furnished corn, pork and bacon, to the value of $125.
In October, 1867,. Harwell conveyed his half of the crop to Chamberlin, to secure the payment of $125, due bim for goods furnished Harwell. This deed was properly registered. After the cotton was gathered and delivered at the gin, receipts were given for the aid cotton to Jones, in the name of Jones and Har- *212 well. While the cotton was in the gin, Chamberlin ■notified the ginner not to deliver Harwell’s portion to any one but Chamberlin. The ginner, however, delivered the cotton when ginned and baled to Jones, who sold it and refused to pay Chamberlin the one-half of the proceeds claimed by Chamberlin as as-signee of Harwell, but claimed the right to appropriate it in satisfaction of his lien for supplies and provisions furnished to Harwell.
Chamberlin commenced his suit at law for the value of one-half of the cotton so sold and appropriated. Thereupon Jones filed this bill of injunction, restraining Chamberlin from prosecuting his suit at law, and insisting on his lien for supplies, and praying for proper relief. The bill was answered by defendants Chamberlin and Harwell, and upon the hearing, the Chancellor held, that Jones had the superior right to the cotton for the satisfactionn of his claim for supplies, and ordered the necessary accounts in the case. From this decree Chamberlin has appealed.
Although there is some conflict in the evidence, we are satisfied that the facts are substantially as already stated.
The question in the cáse is, whether Jones, by virtue of the parol agreement, secured such a lien on Harwell’s half of the crop to be produced, as would overreach the lien secured by Chamberlin, by virtue of the conveyance made by Harwell to him, in October, 1867.
It is insisted, for Jones, that his superior lien is established, and sustained by the case of Tedford v. *213 Wilson, 3 Head, 311. The facts of that case were, that McTier employed Tedford to reside on and manage his farm, and to pay him annually $350 for his services. The parties had a written contract, which provided that “the proceeds of the farm were to be liable to Tedford for his wages.” A judgment creditor of McTier levied on a portion of the crop raised by Tedford as the property of McTier. In deciding the case, Judge McKinney said: “It is true that, as against creditors, a lien cannot be created by contract between the parties, upon a personal chattel in existence at the time of such contract, without registration. But that principle is not applicable to the present case. This was simply an agreement that the future products of the farm, not then in existence, should* be first subject to the satisfaction of Tedford’s annual wages. This is not a contract or agreement falling within either the letter or spirit of the registration act.” It is to be observed that Tedford was employed, for an annual salary, to take charge of and cultivate the farm of McTier. His undertaking was to produce crops for McTier, and McTier’s undertaking was that Tedford, being in possession of the crops, should pay his wages out of them before McTier would be entitled to them. Upon well-established principles, Tedford was authorized to hold on to the crops produced until his compensation was satisfied. He held the farm as the agent of McTier, and when the crops were produced and gathered, he- held them as bailee, and as such could not be- deprived of them until his wages were paid. The written agreement gave to Tedford no more right *214 to retain tbe crops tlian be would have had by the common law. Judge McKinney was, therefore, correct in deciding that this agreement was not such as it was necessary to register for the protection of Tedford against the creditors of McTier. And we concur with him that, as against creditors, a lien can not be created by contract between the parties upon a personal chattel in existence at the time of such contract without registration. But we do not hold that a contract between parties, by which a lien is given on a crop, to be produced, and after it is produced on the land of one of the parties by the other, to secure the owner of the land for future advances to be made to the-other party, would be good against the creditors of the party so «advanced without registration.
The Code, in enumerating the instruments to be-registered, s. 2030, says: “All agreements and bonds for the conveyance of real or personal estate.” Weave of opinion that an agreement for the conveyance of a crop to be raised and gathered is such an agreement for the conveyance of personal estate that it would be void as to creditors or subsequent purchasers for value without registration: Benj. on Sales, 74, 79. Tó hold, that the owner of the land can hold a secret lien on the crop, being raised by his tenant, for advances to be made to such tenant, would put it in the power of the tenants to practice innumerable frauds on innocent parties dealing with them on the faith of the products of their labor. Mr. Washburn (vol. 1, p. 497) states, as the result from a variety of cases,, that “farming on shares makes the owner of the land *215 and tbe farmer tenants in common of the crops. Thus, a contract by which A should have possession of B’s farm, and put in crops on shares, makes them tenants in common of the crops, and A may sell or mortgage his share in the crops.” It follows that if the tenant can mortgage his share of the growing crops to make the conveyance effectual as against creditors,the conveyance must be registered.
When such contracts are placed upon the register’s books, they cut off the means of practicing frauds, and such, we are satisfied, was the intention of the Legislature. We so declared the law during this term of the Court in the case of Hughes v. Whittaker.
The Chancellor held that the lien of Jones was superior to that of Chamberlain. We hold differently, and reverse the decree, and remand the cause for further proceedings. The complainant will pay the costs of this Court. The costs below will be paid as the Chancellor may direct.